IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THUY TRONG LE, *et al.*,   ) | |
| ) | |
| Plaintiffs,   ) | |
| v.   ) | CASE NO. 2:07-cv-1070-WKW |
| ) | (WO) |
| ARCITERRA GROUP, LLC,   ) | |
| ) | |
| Defendant.   ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on Plaintiffs' Motion to Remand (Doc. # 3) and Motion to Strike Defendant's Response to Plaintiffs' Motion to Remand (Doc. # 11). Additionally, there are two other motions pending: a Motion for a Preliminary Injunction (Doc. # 1-4) and a Motion to Dismiss (Doc. # 2). The court concludes that the case is due to be remanded because the court does not have jurisdiction, leaving the latter motions to be resolved in state court.

**I. FACTS AND PROCEDURAL HISTORY**

The facts as set forth in the complaint are as follows. Plaintiffs Thuy Trong Le and Kim Vo (collectively, the "plaintiffs") lease space in the Festival Plaza in Montgomery, Alabama in which they operate Nail Studio and Spa, a nail salon. (Compl. ¶ 6.) The plaintiffs have leased the space in Festival Plaza since September 3, 2002, and in February 2007, they renewed their lease for a five-year period (*Id.* ¶ 5.) Defendant ArciTerra Group, LLC, ("ArciTerra") owns, leases, or manages a parcel of land within Festival Plaza known as Outlot # 3. (*Id.* ¶ 7.) ArciTerra has leased space in Outlot # 3 to another nail salon.

The plaintiffs claim that by leasing space to a competing nail salon in Festival Plaza ArciTerra has violated the Declaration of Restrictions (Doc. # 1 Ex. E). The Declaration of Restrictions imposes limits on Outlot # 3, including the types of business that can be operated, and provides that "the Outparcel . . . shall not be used for any purpose which is not in harmony with the Shopping Center." (*Id.* ¶ 3.3.) The plaintiffs claim that by leasing space to a competing nail salon ArciTerra has disrupted the harmony in Festival Plaza.

In their complaint, plaintiffs seek a declaratory judgment, damages for tortious interference with business relations, rescission of the lease between ArciTerra and the competing nail salon, a temporary restraining order,[1] and preliminary and permanent injunctions. On December 7, 2007, ArciTerra removed the case to federal court and filed a Motion to Dismiss (Doc. # 2). On December 10, 2007, the plaintiffs filed the Motion to Remand (Doc. # 3). On January 21, 2008, the plaintiffs filed a Motion to Strike Defendant's Response to Plaintiffs' Motion to Remand (Doc. # 11). The Motion to Remand is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C.

---

[1] On December 12, 2007, the court entered an order (Doc. # 7) denying the Motion for a Temporary Restraining Order (Doc. # 1) because the plaintiffs failed to show an irreparable injury.

§ 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Id*.

### III. DISCUSSION

The plaintiffs argue that remand is appropriate because the amount in controversy requirement is not met in this case. In the Notice of Removal (Doc. # 1), ArciTerra claims that the amount in controversy requirement is met because the lease agreement that the plaintiffs seek to rescind has a value of over $161,920.00 and because the plaintiffs seek punitive damages. In its brief responding to the motion to remand (Doc. # 9), ArciTerra raises three new arguments about why the amount in controversy is met based on evidence of past jury verdicts, the value of other nail salons, and statements made by one of the plaintiffs.

Diversity jurisdiction exists when there is diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. To determine the amount in controversy, a court first looks to the amount alleged in the complaint. *Burns*, 31 F.3d at 1095. If the plaintiff does not specifically allege an amount in controversy, the removing defendant must establish the amount in controversy by a preponderance of the evidence. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007), *reh'g en banc denied*, Nos. 06-16324, 06-16325, 2008 WL 41327 (11th Cir. Jan. 3, 2008), *petition for cert. filed*, 76 U.S.L.W. 3540 (U.S. Apr. 1, 2008) (No. 07-1246).

The universe of evidence a court can draw upon in evaluating the propriety of removal is usually limited to the notice of removal and accompanying documents. *Id.* at 1214. There are exceptions, however. *Id.* at 1214 n.66. For example, in cases involving contracts where a provision of the contract defines damages for breach, courts may look to the contract to determine the amount in controversy. *Id.* However, if the limited evidence before the court does not establish that removal is proper, then "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* at 1214-15.

## A.   *Value of the Object of Litigation*

For declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In determining the value of injunctive or declaratory relief, the Eleventh Circuit has adopted the plaintiff-viewpoint approach. *See Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218-221 (11th Cir. 1997). Under this approach the value of the object of the litigation is measured solely from the *plaintiff's* perspective – the value of the object to the defendant is irrelevant.[2] *Id.* at 219-220. However, in some cases, the value of an injunction may be "too speculative and immeasurable" to establish the amount in controversy. *Id.* at 221-22.

---

[2] There are strong critiques of the Eleventh Circuit's position. *See Bronson & Migliaccio, LLP v. Kinsey*, 228 F. Supp. 2d 1315, 1316-17 (N.D. Ala. 2002) (describing the rule as arbitrary and noting that "[t]he majority of circuits and of the commentators believe that the amount in controversy can be looked at from either side of the controversy"). Nevertheless, the plaintiff-viewpoint rule is the law of the Eleventh Circuit. *See Fid. Warranty Servs., Inc. v. Kidd*, 45 F. Supp. 2d 1284, 1286 (N.D. Ala. 1999).

ArciTerra asserts that the amount in controversy is met here because the equitable relief that the plaintiffs seek – an injunction and rescission of the contract between ArciTerra and the competing nail salon – has a minimum monetary value of $161,920.00. (Not. Removal 4.) This value is based on the rent that ArciTerra would have collected from the new nail salon over the term of the lease. Thus, $161,920.00 is alleged to be the value of an injunction to *ArciTerra*, not to the *plaintiffs*. Because the court is concerned only with the value of the relief to the plaintiffs, ArciTerra has not established that removal was appropriate on this basis.

B.     *Value to the Plaintiffs*

In its response to the motion to remand, ArciTerra restates its argument by claiming that the value to the plaintiffs must be at least $161,920 because the competing nail salon is willing to pay that amount in rent. ArciTerra argues that because the competing nail salon is willing to pay $161,920 in rent, it expects an income of at least $161,920. ArciTerra concludes that the plaintiffs stand to lose $161,920 if an injunction is not issued. However, ArciTerra's argument relies on speculation about the competing nail salon's income and the loss the plaintiffs will experience because of competition. While the plaintiffs contend that they will lose business because of the presence of the competitor, ArciTerra engages in impermissible speculation by assuming the amount of the competitor's rent establishes the plaintiffs' loss. Because the defendant bears the burden of establishing that removal was proper and uncertainties are resolved in the favor of remand, the court finds that removal on

5

this ground was also improper.

### C.     *Past Jury Verdicts*

ArciTerra's next argument is that the amount in controversy is met here because jurors in other tortious interference with business relations cases have awarded verdicts of more than $75,000.00. This evidence does not establish the amount in controversy for two reasons. First, this evidence is not properly before the court as ArciTerra first raises it in its response brief. (*See* Def.'s Resp. Mot. Remand.) In determining whether removal is proper the court's review is limited to the notice of removal and accompanying documents. *Lowery*, 483 F.3d at 1214-15. Because ArciTerra did not include this evidence in its notice of removal and it was not contained in the removal documents, it is not properly before the court.

Second, assuming *arguendo* the evidence were properly before the court, removal was inappropriate because the evidence of other verdicts does not establish that the amount in controversy is met in this case:

> [T]he facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute – with a record bereft of detail – we cannot possibly ascertain how similar the current action is to those the defendants cite. Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here.

*Id.* at 1221. While the cases that ArciTerra cites involve claims of tortious interference with business relations, they are not factually similar to the dispute here. For example, one involved a dispute about vending machines, *see Tom's Foods, Inc. v. Carn*, 896 So. 2d 443

(Ala. 2004), and another about boat shows, *see Southern Exposition Management Co. v. Universal Auto Sales, Inc.*, 740 So. 2d 992 (Ala. 1998). ArciTerra provides no analysis about why the verdicts are probative of the amount in controversy in this case aside from each of the cases involving tortious interference with business relations.[3] The mere fact that other cases involved the same cause of action does not establish the amount in controversy here.

### D. Other Evidence

ArciTerra also argues in its response brief that the amount in controversy is met based on evidence of the asking prices and gross revenues of other nail salons in the Southeast, which ArciTerra compiled from an internet source. Again, ArciTerra did not present this evidence in its notice of removal, and it was not contained in the removal documents. Accordingly, the evidence is not properly before the court and will not be considered.

Assuming *arguendo* this evidence were properly before the court, it does not establish that the amount in controversy requirement is met here. Indeed, the court is not clear about what purpose this information serves in the amount in controversy analysis. Not one of the salons listed is in Montgomery, Alabama, or even the Middle District of Alabama. There is insufficient information for the court to derive from the sales price and gross revenues of the other salons conclusions about the amount in controversy here, nor is there evidence of the

---

[3] In one of the cases cited by ArciTerra, the jury verdict did not meet the amount in controversy requirement. *See Creel v. Davis*, 544 So. 2d 145 (Ala. 1989) (awarding a verdict of $75,000.00). The amount in controversy requires a sum *exceeding* $75,000.00. 28 U.S.C. § 1332. If the court were to consider previous jury verdicts in determining the amount in controversy here, *Creel* would cut against ArciTerra's argument that cases involving claims of tortious interference with business relations have damages greater than the amount in controversy requirement.

effect of competition on those nail salons. To the extent ArciTerra offers this evidence to establish the losses that the plaintiffs will incur, the court finds the information unreliable and irrelevant.

### E. *Punitive Damages*

ArciTerra also asserts that the amount in controversy is met because the complaint contains a claim for punitive damages. The defendant does not meet its burden of establishing that the amount in controversy is met by putting forth the bare assertion that the plaintiff seeks punitive damages: "[T]his argument begs the question of what those punitive damages are likely to be – a question that [the defendant] bears the burden of answering." *Moore v. CNA Found.*, 472 F. Supp. 2d 1327, 1332 (M.D. Ala. 2007).

### F. *Plaintiffs' Statements*

Finally, ArciTerra claims that the amount in controversy is met based on statements made by one of the plaintiffs. Upon learning that a competing nail salon was opening up, one of the plaintiffs sent an e-mail alleging that the plaintiffs will not have sufficient income to operate the salon with a competitor present. (*See* Def.'s Resp. Mot. Remand Ex. A.) This e-mail does not contain information establishing the amount the plaintiffs seek to recover and instead speaks in general terms about the plaintiffs' nail salon losing value. As a result, it does not establish the amount in controversy.

### IV. CONCLUSION

The plaintiffs' Motion to Remand is due to be granted because the defendants failed

to establish by a preponderance of the evidence that the removal was appropriate.

Accordingly, it is ORDERED that:

1. The plaintiffs' Motion to Remand (Doc. # 3) is GRANTED;

2. The Motion to Strike Defendant's Response to Plaintiffs' Motion to Remand (Doc. # 11) is DENIED as moot;

3. This case is REMANDED to the Circuit Court of Montgomery, Alabama;

4. The Clerk is DIRECTED to take all steps necessary to effect the remand.

DONE this 9th day of May, 2008.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).